IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TRAVIS H. WILLIAMS,**

**Plaintiff,**

vs.                                                    Civ. No. 21-691  JFR

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

**Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record

(Doc. 12)[2] filed November 29, 2021, in connection with Plaintiff's *Motion to Reverse or Remand*

*Administrative Agency Decision and Memorandum in Support,* filed February 17, 2021.

Doc. 19.  Defendant filed a Response on May 31, 2022.  Doc. 25.  Plaintiff filed a Reply on

June 18, 2022.  Doc. 28.  The Court has jurisdiction to review the Commissioner's final decision

under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the

applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is

well taken and is **GRANTED**.[3]

## I.  Background and Procedural Record

Plaintiff Travis Williams (Mr. Williams) alleges that he became disabled on October 1,

2014, at the age of forty-one years and five months,[4] because of chronic back pain, fibromyalgia,

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 3, 5, 6.)

[2]  Hereinafter, the Court's citations to Administrative Record (Doc. 12), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

[3]  This matter is being remanded for additional administrative proceedings.

[4]  On May 6, 2019, in his second application, Mr. Williams alleged an onset date of August 24, 2018.  Tr. 762, 923.

diseases of the musculoskeletal system and connective tissue, depression, post-traumatic stress syndrome ("PTSD"), diabetes mellitus, osteoarthritis of both hands, and thrombocytopenia. Tr. 333, 763.  Mr. Williams completed high school in 1990.[5]  Tr. 334.  Mr. Williams worked as a butcher, retail manager/clerk, and restaurant wait person.  Tr. 323-334, 950.  Mr. Williams stopped working in September 2014 because of his medical problems.  Tr. 333, 949.

On February 2, 2016, Mr. Williams filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr. 295-96.  On July 15, 2016, Mr. Williams' application was denied.  Tr. 196-208, 209, 226-29.  It was denied again at reconsideration on November 7, 2016.  Tr. 210-23, 224, 239. Upon Mr. Williams' request, Administrative Law Judge (ALJ) Michael Leppala held a hearing on January 30, 2017.[6]  Tr. 140-95.  Mr. Williams appeared with attorney representative Patricia Glazek.[7]  *Id*.  On August 23, 2018, ALJ Leppala issued an unfavorable decision.  Tr. 8-25.  On April 17, 2019, the Appeals Council issued its decision denying Mr. Williams' request for review and upholding the ALJ's final decision.  Tr. 1-7.

On May 6, 2019, Mr. Williams filed a second application for DIB benefits.  Tr. 923-24.

On June 12, 2019, Mr. Williams timely filed a Complaint seeking judicial review of the Commissioner's final decision.  USDC NM Civ. No. 19-539  LF.  On March 23, 2020, United States Magistrate Judge Laura Fashing entered a Memorandum Opinion and Order finding that the "ALJ erred by failing to consider Mr. Williams' diagnosed fibromyalgia at any step of the

---

[5] Mr. Williams also reported two years of college.  Tr. 950.

[6] The hearing transcript is dated January 30, 2017.  Tr. 140-95.  The ALJ indicates in his August 23, 2018, determination that the hearing was held on January 20, 2018.  Tr. 11.

[7] Mr. Williams is represented in these proceedings by Attorney Michael S. Liebman.  Doc. 1.

sequential evaluation process." Tr. 984-96. She, therefore, granted Mr. Williams' motion to remand his case to the Commissioner for further proceedings. *Id.*

On July 7, 2020, the Appeals Council entered an Order Remanding Case to Administrative Law Judge. Tr. 798-802. The order instructed the ALJ to conduct further proceedings consistent with the order of the court and to consolidate Mr. Williams' two claims. Tr. 800.

ALJ Leppala held a second hearing on February 19, 2021. Tr. 693-725. Mr. Williams appeared in person with attorney representative Michael Liebman. *Id.* On March 30, 2021, ALJ Leppala issued an unfavorable decision. Tr. 668-83. Mr. Williams declined to seek further administrative review and instead filed this civil action on July 27, 2021. Doc. 1.

## II. <u>Applicable Law</u>

### A. <u>Disability Determination Process</u>

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[8] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

---

[8] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a). "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less,

3

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not

---

or have less responsibility than when you worked before." *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

> **B.**   <u>**Standard of Review**</u>

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]"  *Langley,* 373 F.3d at 1118, or if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

> **III.**  <u>**Analysis**</u>

The ALJ made his decision that Mr. Williams was not disabled at step five of the sequential evaluation.  Tr. 681-83.  The ALJ determined that Mr. Williams met the insured status requirements of the Social Security Act through December 31, 2019, and that he had not engaged

in substantial gainful activity from his alleged onset date of October 1, 2014. Tr. 673-74. He

found that Mr. Williams had severe impairments of degenerative changes and spondylosis of the

lumbar spine, osteoarthritis, diabetes mellitus, essential hypertension, fibromyalgia, anxiety, and

depression. Tr. 674. The ALJ also found that Mr. Williams had a nonsevere impairment of

thrombocytopenia. *Id.* The ALJ determined, however, that Mr. Williams' impairments did not

meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part

404, Subpart P, Appendix 1. Tr. 674-19-21. Accordingly, the ALJ proceeded to step four and

found that through the date last insured Mr. Williams had the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) except he is capable of
> occasionally lifting and/or carrying ten pounds, standing and/or walking for about
> two hours in an eight-hour workday, and sitting for about six hours in an eight-hour
> workday, all with normal breaks. He can frequently climb[] ramps and stairs, but
> never climb[] ladders, ropes, or scaffolds. He can frequently stoop, frequently
> kneel, frequently crouch, and occasionally crawl. He can understand, carry out,
> and remember simple and detailed, but not complex, instructions and make
> commensurate work-related decisions; respond appropriately to supervisors,
> coworkers, and work situations; adapt to work setting and some forewarned
> changes in an usually stable work setting; and can maintain concentration
> persistence, and pace for up to and including two hours at a time with normal breaks
> throughout a normal workday. He is limited to occasional interaction with
> coworkers, supervisors, and the general public.

Tr. 676-81. The ALJ determined that Mr. Williams could not perform any of his past relevant

work, but that considering Mr. Williams' age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that

he can perform.[9] Tr. 681-83. The ALJ, therefore, concluded that Mr. Williams was not disabled.

*Id.*

---

[9] The vocational expert testified that Mr. Williams would be able to perform the requirements of representative occupations such as a Final Assembler, DOT #713.687-018, which is performed at the sedentary exertional level with an SVP of 2 (50,000 jobs in national economy); a Table Worker, DOT #739.687-182, which is performed at the sedentary exertional level with an SVP of 2 (30,000 jobs in the national economy); a Touch-Up Screener, DOT #726.684-110, which is performed at the sedentary exertional level with an SVP of 2 (3,000 jobs in the national economy); and a Buckler, DOT #788.687-022, which is performed at the sedentary exertional level with an SVP of 2 (7,000 jobs in the national economy). Tr. 682.

In support of his Motion, Mr. Williams argues that the ALJ's RFC and evaluation of Mr. Williams' symptoms are legally erroneous and unsupported by substantial evidence because (1) the ALJ failed to consider probative and uncontradictory evidence in according only some weight to treating provider Lyle Amer, M.D.'s *Physical Medical Source Statement*; (2) the ALJ failed to consider probative and uncontradictory evidence in according only some weight to treating provider Carolyn Tjoland, LPCC's *Treating Source Opinion Re: Ability To Do Mental Work-Related Activity*; (3) the ALJ improperly accorded great weight to nonexamining State agency psychological consultant Mark McGaughey, Ph.D.'s assessment; and (4) the ALJ's evaluation of Mr. Williams' symptoms fails to comply with the requirements of SSR 16-3p.[10]

For the reasons discussed below, the Court finds that the ALJ failed to provide legitimate explanations supported by substantial evidence for according only some weight to treating provider Lyle Amer, M.D.'s *Physical Medical Source Statement*.  This case, therefore, requires remand.

### A.   Lyle B. Amer, M.D. and CNP Holly Purcell-Callin

On August 31, 2016, Mr. Williams presented to Lyle B. Amer, M.D.'s practice with complaints of back pain and "all joints hurting."  Tr. 580.  Mr. Williams saw Holly Purcell-Callin, CNP.  *Id.*  Mr. Williams reported not having worked for two years due to pain.[11]  *Id.*

---

[10] Social Security Ruling 16-3p Titles II and XVI: *Evaluation of Symptoms in Disability Claims*.  SSR 16-3p, 2017 WL 5180304.

[11] The Administrative Record demonstrates that prior to seeing Dr. Amer, Mr. Williams reported back pain beginning in April 2014 to primary care physical Debra Higginbotham, M.D., at Sage Family Health Medical Center.  Tr. 504. Mr. Williams saw Dr. Higginbotham seven times between April 7, 2014, and July 30, 2015.  Tr. 422-29.  On July 30, 2015, Dr. Higginbotham prepared a statement that "since 4-17-2014, I have been treating Travis for severe disabling back pain and at this time he is totally disabled."  Tr. 422.  Also prior to seeing Dr. Amer, Mr. Williams presented to Anesthesiology Specialist David Woog, M.D., at Christus St. Vincent complaining of chronic low back pain that had progressively increased in severity over the past several years.  Tr. 451-52.  Dr. Woog obtained MRI studies and diagnosed lumbar spondylosis with facet joint arthropathy.  Tr. 449-50.  On January 14, 2015, Dr. Woog administered bilateral L2-3, L4-5 and L5-S1 facet joint injections.  *Id.*  Mr. Williams also presented to Corey Sutter, CNP, and

Mr. Williams also reported that he had had epidurals and acupuncture, and taken narcotics, "etc.," without effective relief.  *Id.*  On exam, CNP Purcell-Callin noted no swollen joints.  *Id.*  She assessed joint pain and degenerative disc disease lower spine.  *Id.*  She ordered laboratory studies and an MRI.  *Id.*

Mr. William saw CNP Purcell-Callin next on October 31, 2016.  Tr. 580.  CNP Purcell-Callin noted that the September 24, 2016, MRI demonstrated L5-S1 disk protrusion/arthritis and no change from previous MRI.[12]  Tr. 580, 1176-77.  CNP Purcell-Callin noted that Mr. Williams reported the pain was higher in his back now – "pointing to T-10, 11, 12."  Tr. 580.  Mr. Williams also reported that he had pain in all his joints and that he was "miserable."  *Id.*  Mr. Williams reported being intolerant of many medications.  *Id.*  On exam, CNP Purcell-Callin indicated T-10, 11, 12 pain and no joint swelling noted.  *Id.*  CNP Purcell-Callin assessed degenerative disc disease lumbar spine, pain thoracic spine, and joint pain – inflammatory arthritis.  *Id.*  She planned to obtain radiologic studies of Mr. Williams' thoracic spine and a body bone scan.  *Id.*  She increased Mr. Williams' Gabapentin dosage and noted "cannabis trial – get card."  *Id.*

On February 17, 2017, Mr. Williams saw Dr. Amer who noted L5-S1 disc osteophyte complex, back pain, and joint pain – elbows, knees, ankles and shoulders.  Tr. 579.  On physical exam, Dr. Amer noted no joint swelling and indicated paraspinous muscle spasm in lumbar and thoracic areas.  *Id.*  Dr. Amer assessed degenerative disc disease and questioned inflammatory

Carrie Elizabeth Jones, M.D., at Christus St. Vincent in 2016 and 2017 with complaints regarding persistent and worsening low back and left sided hip pain.  Tr. 482-84, 487-91, 492-94, 525-26, 555-57.

[12] On December 27, 2014, Mr. Williams had an MRI Lumbar Spine Without Contrast which demonstrated "[l]eft lateralizing/foraminal L5-S1 disc osteophyte complex and nonlimiting stenosis.  No herniated nucleus pulposis, limiting stenosis or MR evidence neural impingement."  Tr. 455.

arthritis.[13]  *Id.*  Dr. Amer planned to obtain a T-spine x-ray and MRI and prescribed Seroquel and a second illegible medication.[14]  *Id.*

On March 20, 2017, Mr. Williams reported he did not want to take Seroquel due to the possibility of weight gain and affecting his diabetes, and he did not want to take opiates due to previous experiences and side effects.  Tr. 578.   Mr. Williams also reported he was unsure if taking Gabapentin was helping.  *Id.*  CNP Purcell-Callin noted "Bone Scan +" and that Mr. Williams was interested in medical cannabis to control his pain and sleep.  *Id.*  CNP Purcell-Callin noted depression and diagnosed Mr. Williams with inflammatory arthritis, fibromyalgia, and degenerative disc disease lumbar spine.  *Id.*  CNP Purcell-Callin prescribed a trial of Sulfasalazine and Lyrica and decreased Mr. Williams' Gabapentin dosage.  *Id.*

On May 17, 2017, Dr. Amer and CNP Purcell-Callin prepared a *Physical Medical Source Statement* on Mr. Williams' behalf.  Tr. 574-77.  They indicated seeing Mr. Williams at office visits "every 4-5 months"; diagnoses of inflammatory arthritis, fibromyalgia, and degenerative disc disease of the lumbar spine; prognosis was "progressive disease"; symptoms included whole body pain, joint pain and swelling, and low back pain; pain was daily and chronic; pain was precipitated by heavy lifting, walking, sitting, and standing for long periods of time; pain was supported by objective findings including an MRI of the lumbar spine, bloodwork, and a body bone scan.  *Id.*  They indicated that pain medications caused drowsiness and dizziness, and that emotional factors and psychological conditions of depression and anxiety contributed to Mr. Williams' symptoms and functional limitations.  *Id.*

---

[13] Dr. Amer's note included two additional diagnoses on this date that are not fully legible, *i.e.,* possibly fibromyalgia and depression.  Tr. 579.

[14] On March 8, 2017, Mr. Williams underwent a "NM Bone Imaging Whole Body" based on "[o]ther specified rheumatoid arthritis, unspecified site."  Tr. 581-82.  Pertinent results indicated "[p]resumed degenerative uptake involving the joints – primarily elbows, wrists, ankles and feet."  *Id.*

They assessed  that Mr. Williams could (1) walk one city block; (2) sit for 15 minutes without the need to get up; (3) stand for 10 minutes without the need to sit down or walk around; (4) sit/stand for less than two hours total in an 8-hour workday; (5) required shifting positions at will from sitting, standing or walking; (6) needed periods of walking during an 8-hour workday every 15 minutes for 5 minutes; (7) needed unscheduled breaks throughout the day every 15-30 minutes for 15 minutes due to muscle weakness, chronic fatigue, pain/paresthesias, numbness, and adverse effects of medication; (8) could lift and/or carry less than 10 pounds; (9) could never crouch/squat, climb stairs, or climb ladders; (10) could rarely twist, stoop or bend; (11) had significant limitations with reaching, handling or fingering; (12) was incapable of even "low stress" work due to chronic pain; (13) his impairments would produce "good days" and "bad days"; and (14) he would miss more than 4 days of work per month due to his medical impairments.  *Id.*

Mr. Williams returned to Dr. Amer's practice on May 11, 2018, where he saw CNP Purcell-Callin.  Tr. 71.  Mr. Williams reported whole body pain from fibromyalgia and joint pain due to inflammatory arthritis.  *Id.*  Mr. Williams indicated he wanted to decrease "pills" and try cannabis for pain management.  *Id.*  CNP Purcell-Callin made objective findings of no swollen joints and positive trigger points over shoulders and hips.  *Id.*  She assessed fibromyalgia, inflammatory arthritis, depression and anxiety.  *Id.*  She planned to have Mr. Williams try cannabis for pain.  *Id.*

The ALJ accorded *some weight* to Dr. Amer's May 17, 2017, opinion "as it was based on the provider's own clinical observations of the Claimant during treatment."  The ALJ explained, however, that

> although the doctor is the Claimant's treating healthcare provider, the medical record does not show a longitudinal treatment history with the Claimant nor any

diagnostic testing results.  The opinion is poorly supported, as it is not clear, nor did the provider explain, how the objective findings support the extent of the limitations opined here.  Additionally, the opinion is not entirely consistent with the evidence of record as a whole, showing some physical symptoms but otherwise generally normal mobility, motility, and other neurological signs (12F/6; 19F/2; 38F/9; 39F/11; 51F/35).  As such, I find the provider's opinion unsupported by relevant evidence and give opinion only some weight.

Tr. 679.

**B.**   **Legal Standard**

**1.**   **RFC**

Assessing a claimant's RFC is an administrative determination left solely to the

Commissioner "based on the entire case record, including objective medical findings and the

credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71

(10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law

judge hearing level or at the Appeals Council review level, the administrative law judge or the

administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual

functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an

administrative finding).[15]  In assessing a claimant's RFC, the ALJ must consider the combined

effect of all of the claimant's medically determinable impairments, and review all of the

evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R.

§§ 404.1545(a)(2) and (3), 416.945(a)(2).  The ALJ must consider and address medical source

opinions and give good reasons for the weight accorded to a treating physician's opinion.  20

C.F.R. §§ 404.1527(b), 416.927(b)[16]; SSR 96-8p, 1996 WL 374184, at *7.  If the RFC

---

[15] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.

[16] The rules in this section apply for claims filed *before* March 27, 2017.  20 C.F.R. §§ 404.1527, 416.927.

assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.   Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

## 2.    Medical Opinion Evidence

The applicable regulations and case law require an ALJ to consider all medical opinions and discuss the weight assigned to those opinions.[17]  *See* 20 C.F.R. §§ 404.1527(c); *see also Hamlin,* 365 F.3d at 1215 ("[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.").   "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin*, 365 F.3d at 1215. (citing *Goatcher v. United States Dep't of Health & Human Servs*., 52 F.3d 288, 290 (10th Cir. 1995)).[18]  An ALJ's decision need not expressly apply each of the six relevant factors in

---

[17] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017.  *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); (Doc. 19 at 4 n.3.).  However, because Mr. Williams filed his initial claim on February 2, 2016, the previous regulations for evaluating opinion evidence apply to this matter.  *See* 20 C.F.R. 416.927.

[18] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.  *See* 20 C.F.R. § 404.1527(c)(2)-(6).

deciding what weight to give a medical opinion. *Oldham v. Astrue*, 509 F3d. 1254, 1258 (10th Cir. 2007). However, the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ's decision for according weight to medical opinions must be supported by substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005). An ALJ is required to give controlling weight to the opinion of a treating physician if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1215.

Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinion. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 F. App'x. 880, 884 (10th Cir. 2007) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must ... explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc,

and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

     **C.**    **The ALJ's Explanations for the Weight He Accorded Dr. Amer's Assessed Limitations Regarding Mr. Williams' Ability To Do Work-Related Physical Activities Are Not Supported By Substantial Evidence**

Mr. Williams argues that the ALJ's RFC assessing that Mr. Williams could perform sedentary exertional work with certain postural limitations is unsupported because the ALJ failed to provide a legitimate explanations for according only some weight to Dr. Amer's assessed limitations regarding Mr. Williams ability to do work-related physical activities.  Doc. 19 at 24-27.  Mr. Williams first argues that the ALJ's reasoning that Dr. Amer's opinion is not based on diagnostic test results is simply incorrect.  *Id.*  Mr. Williams explains that Dr. Amer based his assessment, in part, on a March 2017 bone scan showing degenerative uptake in multiple joints, an elevated C-reactive protein indicative of inflammation, and positive trigger points on exam. *Id.*  Additionally, Mr. Williams asserts that the record contains corroborating medical opinion evidence of Dr. Amer's fibromyalgia diagnosis and that fibromyalgia was "probably the main cause of his [back] pain."  *Id.* (citing records from Salvador Ricardo Garcia, M.D.,[19] Tr. 36-44, and Carrie Elizabeth Jones, M.D.,[20] Tr. 1197, 1199).

---

[19] On September 19, 2018, Mr. Williams presented to Rheumatologist Salvador Ricardo Garcia, M.D., based on a referral by CNP Svetoslav Antoniev Arsov.  Tr. 36-44.  On exam, Dr. Garcia indicated Mr. Williams "does have tender points to palpation, on joint examination his joints have full range of motion, no palpable synovitis."  *Id.*  Dr. Garcia agreed with Dr. Amer's diagnosis of fibromyalgia and planned to pursue further workup to rule out autoimmune rheumatic disorders.  *Id.*

[20] On February 4, 2016, Mr. Williams established care with Carrie Elizabeth Jones, M.D., a healthcare provider at Presbyterian Healthcare Services St. Michael's Family Practice.  Tr. 487-91.  Mr. Williams complained of back pain. *Id.*  Mr. Williams saw Dr. Jones four times in 2016 and four times in 2019.  Tr. 487-91, 492-94, 525-26, 527-29, 1147-52, 1153-58, 1159-65, 1189-92.  On May 10, 2019, Dr. Jones indicated that it was "[u]nclear why his [back] pain is so severe when ingestion would be muscular.  To me this suggests probably fibromyalgia is the main cause of his pain since his back does not really explain the severity he is experiencing."  Tr. 1150.

Mr. Williams next argues that the ALJ's reference to "generally normal" objective findings demonstrates a profound misunderstanding of fibromyalgia.  Doc. 19 at 24-27. Mr. Williams asserts that the medical record evidence contains numerous reports to support his symptoms related to fibromyalgia, including exhaustion, widespread body aches, muscle weakness, cognitive problems, sleep difficulties, depression, and anxiety.  *Id.*

Mr. Williams last argues that the ALJ's omission of any manipulative impairments at step four is particularly troublesome because the medical, documentary and testimonial record is replete with Mr. Williams' reports of upper extremity impairments resulting in difficulties with manipulative activities like reaching, handling and fingering.  *Id.*

In sum, Mr. Williams argues that the ALJ failed to comply with his *Clifton*[21] obligations to consider all of the evidence, and to discuss the uncontroverted evidence he chose not to rely upon, as well as significantly probative evidence he rejected.

The Commissioner contends that it was reasonable for the ALJ to find that four visits was not a significant longitudinal history when weighing Dr. Amer's opinion and that the ALJ noted subsequent medical records showing greater functional capacity.  Doc. 25 at 13-18.  The Commissioner contends that it was harmless error for the ALJ to say there were no diagnostic testing results because the ALJ gave other valid reasons for discounting Dr. Amer's opinion and because the test results Dr. Amer cited did not support disabling work limitations.  *Id.*  The Commissioner further contends that the ALJ cited objective evidence in discounting Dr. Amer's opinion, which showed that Mr. Williams had normal joint range of motion, no palpable

---

[21] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (in addition to discussing evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects).

inflammation, normal strength, sensation and reflexes, and full upper and lower extremity range of motion.  *Id.*

In sum, the Commissioner asserts that Plaintiff is attempting to have the Court improperly reweigh the evidence in his favor.  *Id.*  The Commissioner further asserts that even if one of the reasons the ALJ provided for discounting Dr. Amer's opinion was invalid, Mr. Williams cannot show harmful error because the ALJ provided other valid reasons for discounting Dr. Amer's opinion.

The Court will address each of the ALJ's explanations and the parties' arguments in turn.

The ALJ first explains that although Dr. Amer is Mr. Williams' treating physician, the medical record does not show a longitudinal treatment history with Mr. Williams or any diagnostic testing results.  As to the latter, the Commissioner conceded that the ALJ's according less weight to Dr. Amer's opinion based on the lack of diagnostic testing is invalid because Dr. Amer did, in fact, include diagnostic testing results to support his assessed functional limitations. And while the Commissioner argues harmless error, in part, because the diagnostic testing "did not support disabling work limitations," this amounts to post hoc rationalization, which the Court may not consider.  *Carpenter*, 537 F.3d at 1267.  As to the former, although the ALJ did not outright reject Dr. Amer's assessment, it is well settled in the Tenth Circuit that a limited treatment history by itself is an invalid basis for rejecting a medical source opinion.  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).  Here, Dr. Amer and/or CNP Purcell-Callin saw Mr. Williams four times over the course of nine months prior to completing their assessment of his ability to do work-related physical activities.  Further, Dr. Amer's assessment is the *only* treating provider medical opinion evidence in the record regarding Mr. Williams' ability to do

work-related physical activities.[22]  Thus, all things being equal, the opinion of a physician who

has examined a claimant, even if only once, is placed above the opinion of a physician who has

never seen the claimant at all and only reviewed the medical record.  *See Robinson v. Barnhart*,

366 F.3d 1078, 1084 (10th Cir. 2004).

The ALJ's explanation also ignored the requirements of SSR 12-2p when assessing an

RFC for a claimant with fibromyalgia and in turn evaluating relevant opinion evidence.  *See* 12-

2p, 2012 WL 3104869 (explaining that an ALJ must consider the longitudinal record when

assessing an RFC for a claimant with fibromyalgia because the symptoms of FM can wax and

wane so that a person may have "bad days and good days").  That regulation explains that in the

face of a fibromyalgia diagnosis, the ALJ was required to consider not just Dr. Amer's records

and assessment, but the longitudinal medical record evidence both prior to and after Dr. Amer's

treatment.  Here, the record supports that Mr. Williams had actively pursued care and treatment

for his persistent back and joint pain for *three years* before Dr. Amer prepared his assessment,

during which time Dr. Higginbotham, his primary care provider, considered him "totally

disabled."[23]  While the Court is mindful that a finding of disability is one reserved to the

---

[22] On July 13, 2016, nonexamining State agency medical consultant Nancy Childs, M.D., reviewed the medical
evidence record at the initial stage of consideration.  Tr. 203-04.  She assessed that Mr. Williams was capable of light
exertional work with certain postural limitations.  *Id.*  On September 28, 2016, nonexamining State agency medical
consultant Robert Weisberg, M.D., affirmed Dr. Childs' assessment at reconsideration.  Tr. 218-20.  The ALJ accorded
their assessments some weight explaining that they were "consistent with the evidence available at the time of their
review."  Tr. 679.  The ALJ explained, however, that there was significant evidence received into the file after their
reviews showing reduced range of motion and tenderness in the lumbar spine, and that the consultants had not
adequately considered the impact of the claimant's pain on his functional limitations.  *Id.*

On November 16, 2019, nonexamining State agency medical consultant William Fleming, M.D., reviewed the medical
evidence at the initial stage of Mr. Williams' second application.  Tr. 778-79.  Dr. Fleming assessed that Mr. Williams
was capable of light exertional work.  *Id.*  The ALJ accorded his assessment some weight explaining that it was
"consistent with the evidence available at the time of their review."  Tr. 679.  The ALJ explained, however, that there
was significant evidence received into the file after his review showing reduced range of motion and tenderness in the
lumbar spine, and that the consultant had not adequately considered the impact of the claimant's pain on his functional
limitations.  *Id.*

[23] *See* fn. 11, *supra*.

17

Commissioner, *see* 20 C.F.R. § 1527(6)(d)(2), applicable regulations and case law require an ALJ to consider all medical opinions and discuss the weight assigned to those opinions.  *See* 20 C.F.R. §§ 404.1527(c); *see also Hamlin,* 365 F.3d at 1215 ("[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.").  The ALJ did not address Dr. Higginbotham's opinion in his determination.  *See* 20 C.F.R. §§ 404.1527(c)(4) (explaining that the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion).  Additionally, the ALJ failed to address subsequent other medical source opinion evidence that supported and was generally consistent with Dr. Amer's determination.  For example, on September 7, 2018, Mr. Williams presented for follow up to physical therapist Denise M. Hansen, PT.  Tr. 1109.   Mr. Williams previously had attended ten physical therapy sessions from January 19, 2018, through April 5, 2018.  Tr. 120-21, 122, 123-24, 125-26, 127-28, 129-30, 133-34, 135-36, 137, 138.  On September 7, 2018, PT Hansen assessed Mr. Williams' functional status as follows:  Walk – *Severe Limitation*; Recreational Exercise – *Severe Limitation*; Sitting – *Moderate Limitation*; Standing – *Moderate Limitation*; Work Animals – *Moderate Limitation*; Driving – *Unable to Perform*.  Tr. 1109.  The ALJ did not address PT Hansen's assessment of Mr. Williams' functional limitations in his determination or how it supported Dr. Amer's assessment of his ability to do work-related physical activities.  *See* 20 C.F.R. §§ 404.1527(c)(4).

Further, the Commissioner's argument that the ALJ cited subsequent medical records that showed greater functional capacity is unavailing.  In support of her argument, the Commissioner cites Exhibits 4F/6, 11F/2-3, 16F/1, 18F/5-6, 19F/1-2, and 23F/1.  The ALJ does not cite Exhibit 23F/1.  That aside, the Commissioner argues, for example, that on June 30, 2017, one month

after Dr. Amer's assessment, Mr. Williams presented to Marshall Watson, M.D., and reported

only "2/10 pain" and *no other symptoms*.  Doc. 25 at 15 (citing Exh. 4F/6).  This is not accurate.

Mr. Williams presented to Dr. Watson for a surgical consult.  Tr. 639-41.  His chief complaints

were lower back pain with bilateral lower extremity numbness, tingling and "SFIC."  Tr. 639.

Mr. Williams reported pain in the middle of his low back around the beltline for several years.

*Id.*  He also reported that although he has some left hip pain, he did not have any symptoms

down his legs.  *Id.*  Thus, Mr. Williams did report pain symptoms to Dr. Watson.  Moreover, the

Commissioner's reliance on this record loses sight of the fact that Mr. Williams was consulting

with a surgeon and considering whether surgery was an option for relieving his chronic pain.

This record aside, three of the records the Commissioner cites *predate* Dr. Amer's

assessment (Exhs. 4F/6, 11F/2-3, 16F/1).  One of the records the Commissioner cites is unrelated

to Mr. Williams' chronic pain (Tr. 605-10).[24]  And one of the records is not cited by the ALJ (Tr.

665).[25]

In sum, the ALJ's first explanation for discounting Dr. Amer's opinion, that the medical

record does not show longitudinal treatment history with the Claimant nor any diagnostic testing

results, is not supported by substantial evidence.

The ALJ next explained that Dr. Amer's opinion was "poorly supported" and not clear

how the objective findings support the extent of the limitations.  Tr. 679.  A plain reading of

---

[24] On May 30, 2017, Mr. Williams presented to cardiologist Timothy Colgan, M.D., with complaints of hypertension and syncope.  Tr. 605-10.

[25] The Commissioner cites a January 19, 2018, physical therapy record to argue that Mr. Williams reported he could walk a mile.  Doc. 25 at 15.  The ALJ did not cite this record.  That aside, the physical therapy record indicates that PT Hansen assessed Mr. Williams' functional status on January 19, 2018, as follows: Walk – Moderate Limitation; Recreational Exercise – Severe Limitation; Sitting – Moderate Limitation; Standing – Moderate Limitation; Work Animals – Moderate Limitation; and Driving – Unable to Perform.  Tr. 665.  PT Hansen also noted that Mr. Williams could walk a *maximum of one mile*, that he could sit for 1-2 hours, and could stand for 30 minutes.  *Id.*  Thus, the Commissioner mischaracterizes the findings in this record.

Dr. Amer's assessment, however, lists Dr. Amer's diagnoses, *i.e.,* inflammatory arthritis, fibromyalgia, and degenerative disc disease of the lumbar spine;[26] explains that Mr. Williams has "progressive disease"; describes Mr. Williams' symptoms as whole body pain, joint pain and swelling, and low back pain; and describes the nature, location, frequency, precipitating factors and severity of Mr. Williams' pain, *i.e.,* daily chronic pain in joints low back and body precipitated by heavy lifting, walking, sitting and standing for long periods of time.  Tr. 574. Given Dr. Amer's diagnoses and findings in support of his assessment, the ALJ's broad and conclusory explanation that the opinion is "poorly supported" and unclear fails to be sufficiently specific to permit meaningful review.  *See Clifton,* 79 F.3d at 1009.  The ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" he gave to the opinion "and the reasons for that weight." SSR 96-2P, 1996 WL 374188 at *5 (July 2, 1996).  The ALJ's explanation fails to meet this standard.

Last, the ALJ discounts Dr. Amer's opinion because it is "not entirely consistent with the evidence of record as a whole, showing some physical symptoms but otherwise generally normal mobility, motility, and other neurological signs (12F/6; 19F/2; 38F/9; 39F/11; 51F/35)."  Tr. 679. To begin, a review of the records cited demonstrates that the ALJ engaged in improper picking and choosing from the medical reports and used portions favorable to his position while ignoring other evidence, which he cannot do.  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)).  For example, Exhibit 12F/6 is a February 3, 2016, record authored by CNP Corey Sutter.  Tr. 567-69.  Mr. Williams presented

---

[26] The ALJ determined at step two of the determination that Mr. Williams has severe impairments of, *inter alia,* degenerative changes and spondylosis of the lumbar spine, osteoarthritis, and fibromyalgia, based on objective findings in the record.  Tr. 674.

to CNP Sutter for follow up on facet injections administered by Dr. Woog on January 14, 2015.[27]
*Id.*  Mr. Williams reported *insignificant* improvement from the injections; persistent low back
and left sided hip pain; numbness in the lower legs bilaterally; pain exacerbated by changes of
position, prolonged positional maintenance, and increased physical activity; and that his pain was
progressively increasing in severity, limiting his ability to complete his activities of daily living,
and decreasing his functionality.  Tr. 567.  On physical exam, CNP Sutter noted normal stability,
normal reflexes, strength within normal limits bilaterally, normal bilateral lower extremities
motor system and sensory exam.  Tr. 568.  This is the portion of the exam the ALJ relied upon.
However, CNP Sutter also noted tenderness left sided sacroiliac joint, paraspinal spasm,
paraspinal tenderness lumbar spine greater on the left, limited forward and backward bending,
positive straight leg raising at 30 degrees on left, able to weight bear but painful, positive
Patrick's Test on the left side, and facet joint loading increases pain.  *Id.*

     Exhibit 38F/9 is a May 20, 2019, treatment note authored by Zachary Morgan Musgrave,
D.O.[28]  Tr. 1144-46.  Mr. Williams presented to Dr. Musgrave for osteopathic manipulation.  *Id.*
Mr. Williams reported worsening mid to low back pain and occasional left hip pain.  *Id.*  On
physical exam, Dr. Musgrave indicated normal lower extremity reflexes and 5/5 strength in
lower extremes bilaterally.  Tr. 1145.  However, Dr. Musgrave also indicated hypertonicity in the
lumbar paraspinal musculature, external rotators on the right, and iliopsoas bilaterally; decreased
range of motion in the right hip internal rotation; restriction of the bilateral superior pole of the

---

[27] *See* fn. 11, *supra.*

[28] The ALJ also cites Exhibit 39F/11 to support "normal findings" which is a duplicate of the Dr. Musgrave's May 20, 2019, treatment note.  Tr. 1194-95.

sacrum, left greater than right; L5 side bend left rotated right; L1-2 FRS right.  Tr. 1145.  The ALJ did not discuss these findings.

Exhibit 51F/35 is a December 11, 2019, treatment note from endocrinologist Georgina Polanco Castillo, M.D.  Tr. 1365.  Mr. Williams had been referred to Dr. Castillo for evaluation of hypogonadism.  *Id.*  On physical exam, Dr. Castillo indicated under "musculoskeletal," without more, "normal range of motion, no edema."  Tr. 1367.  The flaw in the ALJ's reliance on this treatment note is its complete irrelevance in addressing the physical impairments that limit Mr. Williams' ability to do work-related physical activities.  In other words, the purpose of Dr. Castillo's examination was evaluating Mr. Williams' low testosterone.  As such, Dr. Castillo's cursory indication of Mr. Williams' musculoskeletal status on physical exam is void of any meaningful inquiry and does not amount to substantial evidence to support the ALJ's discounting of Dr. Amer's opinion.

The foregoing aside, the Court agrees with Mr. Williams that the ALJ failed to adequately consider symptoms related to Mr. Williams' fibromyalgia and the longitudinal record by referencing a handful of  "generally normal" objective findings in the record to support his discounting of Dr. Amer's assessment.[29]  Mr. Williams' fibromyalgia diagnosis is not in dispute and the longitudinal record demonstrates that Mr. Williams suffers from multiple fibromyalgia

---

[29] The record demonstrates that Mr. Williams saw no less than ten different providers over the course of six years in search of pain relief.  He underwent radiologic and laboratory studies and sought a surgical consult.  He engaged in various treatment therapies, including medication, facet joint injections, physical therapy, myofascial release, and radiofrequency ablation with only limited and temporary relief.  Yet the ALJ primarily relied on the same handful of what he characterized as "generally normal" treatment notes for discounting Mr. Williams' chronic back pain to discount Mr. Williams' fibromyalgia symptoms and to find that Mr. Williams could perform sedentary exertional work with certain postural limitations.  Tr. 678.  Setting aside that the Court has found that the ALJ's reliance on these records was misplaced, the ALJ also did not address at all how Mr. Williams' fibromyalgia symptoms would further limit his exertional and nonexertional capacity or his ability to do sustained work eight hours a day five days a week.  *See* SSR 12-2p, 2012 WL 3104869, at *6 (explaining that symptoms of fibromyalgia wax and wane so that a person may have "bad days and good days").

symptoms.[30]  Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous

connective tissue components of muscles, tendons, ligaments and other tissue."  *Moore v.*

*Barnhart*, 114 F. App'x 983, 991 (10th Cir. 2004) (internal citation omitted).  It is a chronic

condition that causes "long-term but variable levels of muscle and joint pain, stiffness and

fatigue" *Id.*  It is well-established that fibromyalgia is associated with widespread pain and

fatigue.  *See* SSR 12-2p, 2012 WL 3104869, at *6.  SSR 12-2p instructs that in assessing an

RFC for claimants with fibromyalgia, "we will consider a longitudinal record whenever possible

because the symptoms of FM can wax and wane so that a person may have 'bad days and good

days.'" *Id.*  The ALJ did not do so here.

 For all of the foregoing reasons, the Court finds that the ALJ's RFC is not supported by

substantial evidence because the ALJ failed to consider and discuss probative evidence he

rejected when evaluating and weighing of  Dr. Amer's opinion.  This is error and this case,

therefore, requires remand.[31]

 **D.** **Remaining Issues**

 The Court will not address Mr. Williams' remaining claims of error because they may be

affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297,

1299 (10th Cir. 2003).

---

[30] For example, Mr. Williams reported dizziness (Tr. 120-21, 534-35, 596-97); fatigue (Tr. 36-44, 56-59, 110-12, 120-21, 574-77, 1320-21); sleep disturbance (Tr. 36-44, 56-59, 60-67, 68-93, 341-51, 365-72, 516-20, 642-45, 5655-62); whole body pain (Tr. 36-44, 120-21, 133-34, 1320-21); and depression and anxiety (Tr. 56-59, 97-99, 429, 487-91, 516-20, 546-48, 549-51, 574-77, 579, 588-93, 642-45, 655-62, 663-64, 1114-16, 1117-19, 1121-23, 1124-26, 1127-30, 1147-52, 1153-58, 1171, 1334-48).

[31] Mr. Williams requests "that the Court accord controlling weight to Dr. Amer's opinion and remand for an award of benefits or for further consideration of his opinion under the treating source rules."  Doc. 19 at 27.  The Court will remand for further proceedings.

## IV.  <u>Conclusion</u>

For the reasons stated above, Mr. Williams' Motion to Reverse or Remand

Administrative Agency Decision and Memorandum in Support (Doc. 19) is **GRANTED.**

_____

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**